Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIVIANA ROMERO,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>SELECT INTERIOR CONCEPTS, INC., DONALD MCALEENAN, ROBERT SCOTT VANSANT, S. TRACY COSTER, BRYANT RILEY, and BRETT WYARD,<br><br>　　　Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Viviana Romero ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.　This is an action against Select Interior Concepts, Inc. ("Select Interior" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Select Interior by Astro Stone Intermediate Holding, LLC ("Parent"), an affiliate of Sun Capital Partners, Inc. ("Sun"), and Astro Stone Merger Sub, Inc. ("Merger Subsidiary"), a wholly owned subsidiary of Parent.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Select Interior common stock.

7. Defendant Select Interior, together with its subsidiaries, installs and distributes interior building products for residential interior design services markets in the United States. The

Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SIC."

8. Defendant Donald McAleenan ("McAleenan") is a director of the Company.

9. Defendant Robert Scott Vansant ("Vansant") is a director of the Company.

10. Defendant S. Tracy Coster ("Coster") is a director of the Company.

11. Defendant Bryant Riley ("Riley") is a director of the Company.

12. Defendant Brett Wyard ("Wyard") is Chairman of the Board of the Company.

13. Defendants McAleenan, Vansant, Coster, Riley, and Wyard are collectively referred to herein as the "Individual Defendants."

14. Defendants Select Interior and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

15. On August 9, 2021, Select Interior announced that it had entered into a definitive agreement under which an affiliate of Sun would acquire Select Interior in an all-cash transaction. Under the terms of the agreement, each share of Select Interior common stock issued and outstanding immediately prior to the closing of the Proposed Transaction will be entitled to receive $14.50 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**An Affiliate of Sun Capital Partners, Inc. to Acquire Select Interior Concepts for $411 Million**

August 09, 2021 06:00 ET | Source: Select Interior Concepts, Inc.

- **Shareholders to receive $14.50 per share in an all-cash transaction providing attractive valuation**

3


- **Select Interior Concepts to become privately owned company as part of Sun Capital's portfolio**
- **Q2 2021 earnings call previously scheduled for August 9, 2021 cancelled**

ATLANTA, Aug. 09, 2021 (GLOBE NEWSWIRE) -- Select Interior Concepts, Inc. (NASDAQ: SIC), a premier distributor of interior building products, today announced that it has entered into a definitive agreement under which an affiliate of Sun Capital Partners, Inc. ("Sun Capital") will acquire Select Interior Concepts ("SIC") for approximately $411 million in an all-cash transaction (the "Merger Transaction").

Under the terms of the agreement, each share of SIC common stock issued and outstanding immediately prior to the closing of the transaction will be entitled to receive $14.50 per share in cash, representing a 32% premium over SIC's closing price and a 42% premium over SIC's 30-day volume-weighted average price of $10.20 on August 6, 2021. Subject to shareholder approval and other customary closing conditions, including the receipt of required regulatory approvals, the transaction is expected to close early in the fourth quarter of 2021. Upon the completion of the transaction, SIC will become a privately held company and shares of SIC common stock will no longer be listed on any public markets.

\* \* \*

RBC Capital Markets, LLC and Truist Securities, Inc. served as financial advisors and Alston & Bird LLP served as legal advisor to SIC.

Raymond James & Associates, Inc. served as financial advisor and both Kirkland & Ellis LLP and Klehr Harrison Harvey Branzburg LLP served as legal advisors to Sun Capital.

**ABOUT SELECT INTERIOR CONCEPTS**

Select Interior Concepts is a premier distributor of interior building products with leading market positions in highly attractive markets. Headquartered in Atlanta, Georgia, Select Interior Concepts is listed on the NASDAQ. Its Architectural Surfaces Group segment distributes natural and engineered stone through a national network of distribution centers and showrooms under proprietary brand names such as PentalQuartz and MetroQuartz. For more information, visit: www.selectinteriorconcepts.com.

**ABOUT SUN CAPITAL PARTNERS, INC.**

Sun Capital Partners, Inc. is a global private equity firm focused on partnering with outstanding management teams to accelerate value creation. Since 1995, Sun Capital has invested in more than 425 companies worldwide with revenues in

excess of $50 billion across a broad range of industries and transaction structures. The firm has built a reputation as a trusted partner, recognized for its operational experience. Sun Capital focuses on defensible businesses in growing markets with tangible performance improvement opportunities in the Business Services, Consumer, Healthcare, Industrial, and Technology sectors. The Firm has offices in Boca Raton, Los Angeles and New York, and an affiliate with offices in London.

16. On September 15, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

17. The Proxy Statement, which recommends that Select Interior shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Select Interior's financial projections; (ii) the financial analyses performed by Select Interior's financial advisors, RBC Capital Markets, LLC ("RBC") and Truist Securities, Inc. ("Truist"), in connection with their fairness opinions; (iii) potential conflicts of interest involving Truist; and (iv) the sales process leading up to the Proposed Transaction.

18. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the SIC Board and its Reasons for the Merger; (iii) Financial Projections; and (iv) Opinions of SIC's Financial Advisors.

19. Unless and until the material misstatements and omissions (referenced below) are remedied before the October 19, 2021 shareholder vote on the Proposed Transaction, Select Interior shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Select Interior's Financial Projections

20.     The Proxy Statement omits material information concerning Select Interior's financial projections.

21.     With respect to Select Interior's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Net Revenue, (ii) Gross Profit, and (iii) Adjusted EBITDA; (2) Select Interior's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

22.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

23.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

24. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

25. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by RBC and Truist.

26. The valuation methods, underlying assumptions, and key inputs used by RBC and Truist in rendering their purported fairness opinions must be fairly disclosed to Select Interior shareholders. The description of RBC's and Truist's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Select Interior shareholders are unable to fully understand RBC's and Truist's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### a. *RBC's Analyses*

27. With respect to RBC's "*Selected Public Companies Analyses*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 6, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

and financial metrics of each company and transaction RBC observed in its analyses.

28. The Proxy Statement fails to disclose the following concerning RBC's "*Discounted Cash Flow Analyses*": (1) the standalone unlevered free cash flows that the Company was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2025, and all underlying line items; (2) the terminal values for the Company; and (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of 2.0% to 3.0%, and (ii) range of discount rates of 13.0% to 15.0%.

29. The Proxy Statement fails to disclose the following concerning RBC's analysis of analyst price targets for the Company's common stock: (1) the individual price targets observed by RBC in its analysis; and (2) the sources thereof.

    **b. *Truist's Analyses***

30. With respect to Truist's "*Selected Public Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Truist observed in its analyses.

31. The Proxy Statement fails to disclose the following concerning Truist's "*Discounted Cash Flow Analysis*": (1) the projected unlevered free cash flows of the Company for the years 2021 to 2025, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rates ranging from 1.0% to 3.0%, and (ii) discount rates ranging from 10.7% to 11.6%; and (3) the terminal values of the Company.

    **3. Material Omissions Concerning Truist's Potential Conflicts of Interest**

32. The Proxy Statement omits material information concerning Truist's potential conflicts of interest.

33. The Proxy Statement fails to disclose the timing and nature of the past services

Truist and/or its affiliates provided Sun, Parent, and/or their affiliates, including the amount of compensation Truist received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

34. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

35. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

36. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

37. The Proxy Statement provides that, during the sales process, Select Interior entered into confidentiality agreements with numerous potential buyers.

38. The Proxy Statement, however, fails to disclose the terms of the Company's confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

39. Without this information, Select Interior shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because

9

a reasonable Select Interior shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

45. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

50. In particular, each of the Individual Defendants had direct and supervisory

involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

        B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

        C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

        D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

        E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 6, 2021                      Respectfully submitted,

                                                **HALPER SADEH LLP**

                                                By: /s/ Daniel Sadeh
                                                Daniel Sadeh, Esq.
                                                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                667 Madison Avenue, 5th Floor
                                                New York, NY 10065
                                                Telephone: (212) 763-0060
                                                Facsimile: (646) 776-2600
                                                Email: sadeh@halpersadeh.com
                                                                           zhalper@halpersadeh.com

                                                *Counsel for Plaintiff*